Oyez, Oyez, Oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have three interesting cases and lots of good lawyers. It's good to have you here. In the first case, it's now Riley v. Bondi, Ms. Profese. Did I mispronounce her? It's good to have you with us. We appreciate your work. You've already been to the Supreme Court with this case. Yes. Congratulations. Thank you. May it please the Court. My name is Elizabeth Bravacci and I represent the petitioner in this case, Mr. Pierre Riley. If removed to Jamaica, petitioner will be killed by a local gang leader with the acquiescence of the Jamaican government. The immigration judge, the finder of fact in this case, observed petitioner on direct and cross-examination, listened carefully to his testimony, asked him questions and reviewed extensive background and country conditions evidence. The immigration judge found him credible and granted him relief under the Convention Against Torture. Absent clear error, the Board of Immigration Appeals may not substitute its own view of the evidence for that of the IJs. However, in this case, the BIA reweighed the evidence and substituted its view of the evidence. How about jurisdiction? There is jurisdiction in this case, Your Honor. Well, I know that's your position, but explain to us how you have jurisdiction. Sure. So, section 1252. I mean, we're going to get to your merits. Sure. So, section 1252 confers jurisdiction on this court to review final orders and other issues contained therein. And so here, section 1252A4 provides for direct review of claims arising under the Convention Against Torture, as petitioner brought here. Can I ask one question about that position? So that was the position you took the first time you were before the Fourth Circuit on appeal and we rejected it. And I know that was an unpublished opinion, but is it law of the case? It's not, Your Honor. Our position is that following the Supreme Court's order overturning this court's ruling on jurisdiction, the jurisdictional question is revised anew. Well, it's sort of, I mean, our law on this is not 100% clear what happens when the Supreme Court, GVR is one of our opinions, sort of what happens to the parts of that opinion that weren't touched. Certainly, Your Honor. So, petitioner's position is that there's jurisdiction here. The Supreme Court clarified what the final order of removal is in this case. And so here, the main issue was the timing. And with the timing issue gone, petitioner is able to bring forward his claim. So, help me there. Why do you say the timing issue is gone? Because the government's concession that they aren't going to enforce the 30-day issue? Yes. And so because now petitioner had filed his petition for review after the BIA's order and not 30 days after the final order of removal, now with the government having waived that deadline, petitioner is able to proceed and this court is able to exercise jurisdiction. Do you disagree with the proposition that aside from timing, you must be seeking the review of a final order of removal in order to have the review of your CAT claim? We do disagree that we need to challenge the final administrative removal order in order for this court to have jurisdiction. So, your position that we have jurisdiction is under the belief that you don't have to have a final order of removal to review CAT? That we don't need to challenge that, yes. Is the statutory basis of that 1252A4? It is. That's the statutory basis. And the zipper clause here, B9, also supports that because Nasrallah clarified that the zipper clause here just dictates that all claims be brought together. And so in an ordinary case, right, putting the timing and the expedited removal issue to the side, in an ordinary case, the case comes up from the IJ to the BIA and the BIA might deny removability and deny the CAT claim and the petitioner only challenges the CAT claim. In that case, they're only bringing forward a challenge to the CAT claim. And so they don't need to challenge their removability for this court to have jurisdiction. Here, it's a little bit wonkier because of the expedited removal issue and the timing issue. But generally, following those same principles, you don't need to bring a frivolous claim challenging removability for this court to exercise jurisdiction. And so bringing those together, these situations, it makes sense that perhaps this court will require that we challenge the FARO by form and list it in the petition. But for this court to truly address the merits of our claim, we don't need to bring a challenge to removability. Do you read Nasrallah or Riley to support that view or just not to reject that view? We read Nasrallah to support that view. Because every, that's interesting. I mean, because I agree Nasrallah cites A4 as one of the provisions, but it really cites 1252 or whatever. I may have the statute wrong, but the other statute that talks about reviews of CAT. And there's at least a reading of that, that the CAT review exists but must be along with a challenge or review of the order of removal. I know you disagree with that. It just seems like every time in Nasrallah they say it, they say along with the order of removal. So I'm struggling with how we don't have to have an order of removal to review the CAT claim or a petition to review the order of removal. If I may, in Nasrallah, the respondent in that case raised a similar argument saying that the Foreign Affairs Reform and Restructuring Act requires that the final order of removal be brought up at the same time as the CAT claim. So they had to come together. And the Supreme Court firmly rejected that in saying that the Real ID Act provides for a direct review of section 1252A4. And that's, I believe, in the same paragraph on page 585 of the court's opinion in Nasrallah. I'm hoping you can help me sort of get my hands around sort of practical implications and the stakes of this argument. Because, you know, you start by saying you don't have to bring a frivolous or just kind of make-weight challenge to the final administrative removal order. But that is only because of the waiver of the time bar, right? The Supreme Court says in Riley everybody else is, in fact, going to have to bring kind of a made-up fake claim against the FARO. You're in a different position only because of the waiver? Yes, Your Honor. But if I may clarify how we envision this process moving forward in the future. Our understanding is reading Riley v. Bondi, the Supreme Court's opinion, is that in these cases petitioners will flag that they're going to challenge their FARO and that they have a withholding claim processing. And that they may then, at the conclusion of those withholding proceedings, may then choose which orders to appeal. Wait, I'm sorry. The part where the Supreme Court says in Riley, look, this isn't going to be such a practical problem because going forward people can challenge within 30 days the FARO, tell the Court of Appeals, don't rush because I'm waiting for my withholding-only proceedings, and then the Court of Appeals can stay the appeal and hear everything at once. That's right. And so in this case the issue is really just because of there is, for lack of a better term, a misunderstanding of what a final order of removal was, previously in this Court the rule was that you had to appeal from the BIA's position. You're agreeing that that's the process that the Supreme Court has outlined in Riley. So there are going to have to be these kind of make-weight appeals of FAROs, even if someone is only interested in actually challenging the outcome of the withholding-only proceedings? That's how we anticipate that process will go. Okay. So what's at issue here is just the, however big it is, but the set of people who have a waiver of the time bar. Because otherwise you really got to get in and challenge the FARO within 30 days. That's our understanding, yes. Okay. Do you have any idea how many people we're talking about? Is this five people? Is it a whole bunch of people? I mean, I'll ask your colleague this too. Our understanding is generally only about 300 people are granted deferral of removal under the CAC. No, I'm sorry. How many people have a waiver of the time bar? Leftover from the last administration, I assume is what we're talking about. I'm just trying, is this like, we're having this huge, big discussion and I'm actually just trying to figure out how many people are affected. How many cases are we talking about? Our understanding is that it's a handful, but I do believe my colleague would be in a better position to answer that question. Now, you have a motion pending to amend the petition? Yes, Your Honor. And you're still sticking by that? Your position's the same on that? Our position is the same that it might be unnecessary, but if this court determines that by form our petition was lacking... No, I'm not, unconditionally, you sponsor that motion? Yes. You want it granted? If this court needs... You're kind of conditioning it, that's what I'm asking. You want the motion to be granted? So that this court can have jurisdiction, yes. If this court finds otherwise, our client will likely be returned to Jamaica and killed. And so we're doing whatever we can to sort of protect his life here. And you want us to grant the motion that's pending? If this court determines it needs to to exercise jurisdiction, yes. Counsel, as I read your motion, petition to amend, you're asking that we clarify that your petition for review includes the order of removal in terms of the challenge, is that right? If necessary, yes. I appreciate the necessary part, but do you make any challenge to the order of removal? It looked like you just wanted us to construe it formally to challenge order of removal, but you're not challenging anything about the order of removal? We have no challenge to removability in this case. What about the merits? So on the merits, Mr. Riley will be killed if he's returned to Jamaica. In this case, the immigration judge found him credible and granted him relief under the CAT. The BIA then impermissibly reweighed that evidence and substituted its own view for that of the immigration judge. The immigration judge found Mr. Riley credible and the BIA, while it said that it agreed with that credibility determination, then reweighed that evidence. The BIA then proceeded to disregard Mr. Riley's testimony throughout, referring to it as speculative. The BIA seems to argue that Mr. Riley needed to provide additional corroborating evidence, which he doesn't need to under the regulations and this court's precedent. However, Mr. Riley submitted troves of corroborating evidence. He submitted sworn testimony from family members, which supports his claim, and he supported ample country conditions and background evidence. And so, for example, the BIA ignored important legally significant evidence when it misconstrued petitioner's claim by calling it speculative. For example, the Board of Immigration Appeals points to the fact that Mr. Riley said that he knows that the local gang leader killed his cousins because the associates bragged about these things. But the BIA seems to construe that as showing that Mr. Riley's claim was speculative. However, that statement comes in a long paragraph in Mr. Riley's testimony in which he explains how he knows that Don will kill him if he's returned and that Don killed his cousins. And so, by ignoring the other aspects of the immigration, or excuse me, of Mr. Riley's testimony and the evidence, the BIA then proceeds to reweigh the evidence that the immigration judge considered. Can I just ask you a question about the standard of review here? What if I thought, oh, this is a close case, like you could reasonably come out either way on this? Does that mean, and I think the government sort of suggests this, that then I should defer to the BIA because its view is supported by substantial evidence? Or does it mean that the IJ wins because the BIA is only supposed to be reviewing? What's the standard of review here? The standard of review is that this court reviews the BIA's, it's kind of a long answer, Your Honor, I apologize, but the BIA reviews the IJ's decision for clear error. And then this court reviews the BIA's application of that standard of review, at least for the clear error, de novo. And so, in this case, right, the question is whether the BIA substituted its view of the evidence for the immigration judges. And in this case, it's pretty clear that that's what happened. And that's the question I review de novo, no deference to the BIA, even though the BIA says we're applying clear error review. That's right, because reading the BIA's decision, it's quite clear that they are reconsidering the evidence de novo, rather than finding that the IJ's findings of facts were illogical, implausible, or completely without support from the record as a whole. But if you, that's, I appreciate that position, but if we believe the BIA was acting in accordance with its authority on review, we would review that for clear error, correct? The, this court would review the BIA's factual findings for substantial evidence, yes, your honor. For substantial evidence? Yes. However, in addition to that issue, the BIA did... But the IJ found the petitioner was credible. That's right, your honor. And that credible testimony alone, under the regulations and this court's precedent, can meet the petitioner's burden of proof in this case. So is it your view that if the immigration judge finds the petitioner credible, and that that's kind of the end of the, I mean, does the BIA, its hands are tied then? No, your honor. The BIA reviews the immigration judge's findings for clear error, and that... Someone can be testifying credibly in the sense that they're not lying and, you know, their testimony may be insufficient or not lead to the conclusions that the petitioner, you know, claims they lead to. That's right. And using an extreme example, if a petitioner testified that he's being persecuted by a green-eyed alien, the BIA would find that, and the IJ found him credible and found that as the BIA would be able to find that that was illogical or impossible or unsupported by the record as a whole. And so the BIA doesn't even... I'm sorry, in that example, is the BIA finding clear error in the credibility finding? In the fact finding. So you could credit, you're saying you can credit the petitioner believes he's being persecuted by the green monster? That's right. And then the finding of fact that's true would be illogical. And so that would be clear error. And here, the BIA doesn't have that finding. But in addition... I think, I'm sorry, I just, because this does seem what's hard about the case for your client is that you can credit his testimony. He believes that this guy is the one who's responsible for the killings and that this Don person will kill him if he comes back. He 100% believes that. But as the BIA says, he doesn't have any firsthand knowledge. Like our cases, or at least it seems to me, many of our cases, once you credit the person, there's firsthand knowledge. He says, Don told me he'll kill me if I come back. And we're missing that here. So there is at least a bit of a gap between crediting the petitioner and making the case. And that seems to be what the BIA was concerned about. Certainly. My time has expired. May I continue? You answer questions as long as you get them. I just want to make sure. So in this case, petitioner doesn't have to have firsthand knowledge. And the preamble to the regulations for the withholding only procedures, they explain that often the evidence that the immigration judges deal with is hearsay or isn't based on firsthand knowledge. And that's okay. These judges are skeptical and they're well-trained to make these discerning decisions. But putting aside the fact that petitioner may not have firsthand knowledge that Don killed his cousins, that just provides background and motive for the reasons that Don wants to kill petitioner. Petitioner knows that Don wants to kill him. Jamaica is a violent society. It might not make sense to us why Don wants to kill petitioner. And what's the best record evidence that Don wants to kill the petitioner? Don has made calls to several members of petitioner's family, making it clear that were affidavits from several members of the family as well, right? That's correct. He testified and had affidavits. He did. But the family doesn't say it's Don making the calls, right? They just say we're getting the calls. The calls are coming in. Yes. And then I believe it's either the brother or the stepfather who makes it clear that they understand that the calls are coming from someone known to petitioner. And in Aredas Deris, this court dealt with a similar issue, where in that case, asylum, but very similar, where the family members' credible affidavits made it clear that a gang member or a leader was calling them making threats. And in that case, this court said that they don't need to identify the person by name in order for it to make sense. And so here, petitioner credibly testified, filling in the gap as to who the threats were from. And together, the IJ considered that evidence and weighed it and found that Don is likely to kill petitioner if he is removed to Jamaica. Thanks very much. Thank you. You've saved some time, I think. Ms. Fowle? I'm good to have you with us, Ms. Fowle. Thank you. Good morning, Your Honors, and may it please the court. Cori Fowle on behalf of the Attorney General. This case presents a jurisdictional issue which this court must resolve before it can proceed to the merits of this case. We don't have to resolve it if we grant the motion to amend the petition, right, to add the Fowle? If you grant the motion to amend. Can I ask why we shouldn't just do that? I mean, the court in Riley literally says, here's how this is going to go. You're going to file a fake appeal from your farrow. That's going to buy you time. You'll tell the court of appeals, just don't do anything until withholding only is finished, and then you can challenge everything at once. And then they say, and don't worry, because if the petitioner doesn't know about trying to file the fake appeal from the farrow within 30 days, the government can do what it's done here and just waive the timeliness issue so they can just amend it later. Like, what is the problem? All that they want to do is exactly what the court says to do in Riley. And, Your Honor, I don't, the government does not read Riley to say you can file a fake appeal of the farrow. It says you can file an appeal of the farrow even if what you're concerned about is the withholding. And here, petitioner has never challenged, even in the motion to amend, anything about the farrow. The court is contemplating in Riley. They're trying to figure out how are we going, how is someone who is like Mr. Riley, I mean, they're talking about the same guy, all he wants to appeal is the withholding only proceeding. So here's what people like that should do. File a, let's call it a protective appeal from the farrow within 30 days, and that will allow you to do what you really want to do, which is challenge the withholding only proceedings. I just feel like the court laid this out for us. And the government's position is that there has been no challenge to the farrow, and at this point in the proceedings that it's very late. But you've waived the timeliness issue. Waived the timeliness issue. You're not backing out of that waiver, are you? No, the timeliness issue. They even waived that before the Supreme Court. That is correct, Your Honor. The timeliness issue is separate and apart from challenging a final order of removal. And here Riley tells us. So your counsel, if I understand, you're not waiving the timeliness, but your position is at some point you have to challenge the removal order, right? The government is waiving the timeliness issue. But yes, correct, Your Honor. You're not withdrawing your waiver. Not withdrawing the waiver on the timeliness issue. You're sticking with the waiver. Sticking with the waiver. Could I come back to the question? Because I struggle with what Riley's telling us and what it's not telling us. In terms, the first part of the case has this discussion, and it pretty clearly limits its holding to the fact that the farrow is the final order and that withholding only proceedings don't disturb removal. But Judge Harris is right. It talks about, in that section four right before it, some kind of practical things. And I'm, yeah, I'm not, it's not clear to me what those mean. It sounds like Judge Harris thinks that means you can file a challenge to the removal, order of removal, without any basis to do so. And that allows you to then later challenge cap. I don't disagree that that's not what it's saying, but it doesn't say that as explicitly to me as maybe it does to others. So how do we read that section before, right before the holding? Is it dicta that's not binding? Is it something, what do we do with it? Well, Your Honor, I would say that you don't need to decide the precise parameters of what that means in this case because Petitioner never challenged the farrow. They have a petition to amend and you can't, you're not backing off the timing of that. So if that does mean that you can file a fake or a protective petition, they're maybe trying to do that. So maybe we do have to figure it out or, yeah, help me with that. Why am I wrong there? I would like to take a step back and address the motion to amend and why the government opposed the motion to amend is that there are no cases which have ever permitted an amendment to a petition for review challenging an immigration decision to raise a new challenge to a new agency decision, particularly at this stage in the litigation. Let's assume there's some technical reason where there's no case that allows it. What if tomorrow they filed a petition to review the order of removal and didn't say anything substantively about it? So it's not an amendment, it's not after the fact, but they filed a petition, you've already said you're not going to hold them to the 30 days, so now we've got a petition for removal. And I think that would be different because that would be a new petition for review. I'm trying to figure, it's still, it's procedurally different, but it causes us to, I think, figure out whether a challenge to the removal order in name only that doesn't bring any actual challenge is permissible after Riley. And I believe, I may be incorrect, but I believe that issue is pending before this court in Martinez after Martinez was sent back and the government did oppose the final motion to dismiss the second petition for review. In that case, challenging the reinstatement order on the grounds that the government, that would be a new petition for review and timeliness was not waived in that case. I mean, I'm trying to get you to answer the question of whether or not a meritless petition to review a removal order is something that can create jurisdiction under Riley for a cap decision later. There is a possibility that it could. What's the government's position? The government's position is that that is not squarely before the court here and that is something to be decided in future cases. The petition to amend or the motion to amend that Riley has filed puts that squarely before the court and we've got to decide it. Assume I think that or assume hypothetically our court thinks that. What's the government's view? That Riley does not contemplate that procedure so broadly that you could file what is essentially an empty petition for review, not challenging any merits of that final order of removal. Can I ask you the same question I asked your colleague? How many people, it does seem that all the jurisdictional arguments here are only going to be relevant as to the class of people who have a waiver of this time bar because otherwise everybody knows from Riley that you have to file an appeal from the faro. And I understand you may have a different view as to whether that can be kind of a purely protective appeal or whether you actually have to come up with some ground. But from now on, everyone's going to appeal the faro. So how many people are we talking about? What is the big deal here? The government's position is that it's not a large group of people because it's going to be people whose petitions were pending and stayed during Riley and then the government waived the timely issue. Right. So is it like a handful of people? What is the big deal? Why don't you? We're just talking about a few people. We're not talking about a large number of people. What's large mean? A rough sense? Yeah, like more or less than 10. 300? Somebody said 300 already. No, that's how many people in deferral only. How many people have a time waiver from the last administration? Over all the circuits? Less than 100, I would guess. And so then that... That's a guess? That's a guess. Yes, Your Honor. So you don't know? No, I don't know exactly. I don't know is also a good answer when you don't know. I don't know, Your Honor, based on the information. But your guess, your best guess, it's less than 100. Yes, Your Honor. And so then following petitioner's position on jurisdiction, it would create a framework where a challenge to a final order of removal is not required, which is not contemplated by the statutes governing judicial review of cat claims. And Nasrallah makes clear that there are multiple statutes that govern review of cat orders. It is not only A4. 1252-A4, but also 1252-A- What does A4 do in your view? Does it provide jurisdiction? Does it do something else? Tell me what you think A4 does. That it's not an independent grant of jurisdiction, but it permits an alien to bring a cat claim under 242. And FARA section 2242-D, which is also one of the provisions, makes clear that a cat claim can only be brought as part of the review of a final order of removal pursuant to section 242 of the INA. And then- So you said that A4, if I understood you, I may have misunderstood you, permits someone to bring a cat claim? Yes, Your Honor. I read it differently. I mean, it looks to me like it's talking about the judicial review of a cat claim. That's correct, Your Honor. To bring a cat claim before the court of appeals pursuant to a petition for review, as opposed to habeas review in district court. But I mean, that could mean a couple things. It could be it provides jurisdiction to the court of appeals to review it. Or it could mean this gives direction to, if there is a review, and if there is jurisdiction, to where it should be. Correct, Your Honor. It sounds like you think it means jurisdiction in some way. It means what may be brought before the courts of appeals, and how those claims may be brought. Page 517 of NASRALA, the first sentence under section A, states that it describes, quote, interlocking statutes that provide for judicial review of final orders of removal and cat orders. And so the Supreme Court in NASRALA was looking at the interplay between all of these statutes. And then in Riley and the Thomas concurrence, in addition to looking at NASRALA and Guzman-Chavez and now Riley, that's the progression here. Counsel, I understand the jurisdictional argument. When I read Riley, it does seem sort of like an unusual and kind of pregnant silence by the majority in response to Justice Thomas's concurrence. There's not even like the usual sort of pro forma, like, oh, our colleague here has raised this jurisdictional question, but we, of course, leave that to the Fourth Circuit on remand. Do I read anything into the kind of just like complete, stony silence in response to that concurrence? I don't believe you can read anything in that, because there was also no explicit rejection. It seemed unusual to me that there was not even a reference to it. And it can't be like party presentation, because it's a whole jurisdictional question. It just seemed, but you think just read nothing into it. I'm genuinely puzzled as to what happened here. And there is no acknowledgement of it, one way or the other, as an endorsement or a rejection of it. And wouldn't it also be, this is also reading T. Lee, so I don't have any greater answer on that issue or the one I'm saying, but if the majority opinion is suggesting the way to do this is, you know, meritless challenges to review orders, that would seem to foreclose Justice Thomas's view, and he's concurring in whole in the opinion. So this is a bit of an enigma for me too. That's correct, Your Honor. But also in the majority opinion, when they're talking about these different options in these cases, there's nothing that said there's, you know, any kind of independent grant of jurisdiction over CAT claims absent a final order of removal, which would kind of address Justice Thomas's concurrence. So as you said, it would be reading T. Lee. Could you, I may have cut you off, or you're good with that answer. Yes. Your colleagues, I'm moving to the merits. Yes, Your Honor. Your colleague says that the Board of Immigration's appeals has improperly reweighed the evidence. What's your position about whether the Board of Appeals has acted improperly or not? Here, the Board properly reviewed the immigration judge's decision for clear error. It pointed out several areas where the immigration judge clearly erred in his factual findings. And both this court in Turkson and the Supreme Court in Mingdi recognize that the Board can override an immigration judge's factual findings. And here, the immigration judge found that evidence corroborated that Don murdered petitioner's cousins. Can they reject a credibility finding? Can the Board reject a credibility finding? The Board did not reject. Can they? I ask you if they can reject a credibility finding. Yes, Your Honor. The Board can reject a credibility finding. So the iJ can rule the witness is credible, and the Board can say the witness is not credible. That's correct, Your Honor. I believe that happened in one of the more recent cases from this court. Even though the iJ is the only one who's heard the witness. That's correct, Your Honor. But here, the Board... No, that's different than normal trials situations that we deal with. You know that, don't you? Yes, Your Honor. And here, the Board explicitly declined to disturb the immigration judge's credibility finding. What's the... I'm sorry, Jay. I was going to ask that, but you answered before I... So we kind of batted this around a little bit earlier. So it's kind of odd when you... You're not challenging the credibility, but you are coming to different conclusions about... That's not you. The Board is coming to different conclusions about the evidence and what it shows, and finding that the immigration judge's findings about the evidence were not supported by the record. When you don't disturb credibility, you at least have to... It seems like an implication of that is that the record shows Mr. Riley believed he would be murdered. What do we do with an unchallenged credibility finding? How can you have that and still have the decision it made about the factual matters? Precisely for the reason that you stated, Your Honor. Petitioner may believe these things are true, but that does not necessarily satisfy his burden of proof. That's what Ming Dai, the Supreme Court, said in Ming Dai. Petitioner's credible testimony or his belief about these things is a separate issue from his burden of proof. And here, the immigration judge specifically said that there was evidence that supported petitioner's belief that Don murdered his cousins and was responsible for the threats. But in the affidavits from family members, there's nothing showing that Don was responsible for the murders or the threats. The stepfather even said, we don't know who is making these threats. So it's... I'm sorry. I'm sorry. On the murders, the immigration judge is actually really clear. There's this gap in the evidence. But there is a gap because he wasn't there when his cousins were killed. So even though he believes it was Don, he does not have firsthand knowledge. And so the IJ during the hearing really pushes him on this. And he does give this very lengthy answer about, I know that's who killed my cousins because that's how this works. The Don, this is a terror campaign. The Don is terrorizing the neighborhood and it only works if everybody knows who did it. So everybody knows who did it. They brag about it. That's how this thing works. And if the IJ finds that credible and the BIA also finds it credible, I guess I'm not seeing... Like maybe it's a close question whether that's enough to fill the gap. But I don't see how the IJ was clearly erroneous in finding, okay, that answers the question. That fills the gap. Well, on page 30 of the immigration judge's decision, it's around the middle of that page. The immigration judge says, there's a letter from family members that also identify Andrew Hamilton as being influential in the neighborhood and having been the source of various threats. There is also corroboration of the two cousins who were killed. And then that's when it talks about how the applicant filled in the gap. But the letter from family members do not identify. To what extent the letter from... So, okay, so you think the BIA doesn't say this, I don't think. But the big clear error the IJ made was said that the letters about the threats say that the threats are coming from Don. And saying that there was evidence in the record to corroborate petitioner's testimony, petitioner's belief. And there's no specific evidence in the record tying Don to the murders or to the threats. I just gave you the evidence that the IJ credited tying him to the murders, which is, that's how this works. The Don is terrorizing the neighborhood. For that to work, everyone needs to know who committed the murders. So everybody knew because they brag about it. That's the evidence. If I may, your honor. Yeah, you go ahead. As long as you get questions. Thank you. Go right along. And the board is talking about how the evidence discussing the murders doesn't mention Don. And so, yes, the immigration judge pointed to petitioner's testimony. And the board is saying that's... Why wouldn't, okay, accepting that if we just have the petitioner's testimony, maybe it's not corroborated, but we have the petitioner's testimony. Is that enough evidence to overcome the limitations on what the board can do? The board could still find in that situation that the petitioner's belief was not sufficient to meet his burden of proof. And that's where... But let me just make sure you're... I want to make sure my question is precise enough. Certainly people could view that evidence from Riley as insufficient. But if the immigration judge... If the immigration judge... Is the corroboration necessary for the immigration's judge to satisfy the clearly erroneous standard? For the board? Yeah, for the board to be... So if the board's correct in saying the corroborating evidence is not corroborating because it's not specific as to this particular person, do we get to look at just Mr. Riley's testimony itself? Does this court get to look at Mr. Riley's? Does the fact that Mr. Riley said that it's not clearly erroneous and therefore the board can't come to a different conclusion? No, because the board can look at the immigration judge's fact findings under the clearly erroneous standard. And that's what the board did here. And it reached a different conclusion. A three-judge panel of the board reached a different conclusion. And this court would have to find that the record compels reversal. I may just be repeating, Judge Guadalupe, on this question. I hear you when you say the board looked at the evidence and it reached a different conclusion. And that's actually what it looks like to me, too. Like, they looked at the evidence and they came out differently than the IJ. But that's not the same as the board explaining why the IJ's conclusion was clearly erroneous in that it's implausible, illogical, can't be reconciled with the record. Like, I'm not... It does really read to me like they're just saying, oh, we see it differently. Like, we weigh the evidence differently, but that's not enough, right? And on page five at the top of the board's decision, the board engages with the evidence. It considers petitioner's testimony and also the affidavit. So it wasn't just saying, we just don't agree. It was looking at the entirety of the record evidence in this case. But they reweighed the evidence. They did not reweigh the evidence. They reviewed the IJ's factual findings for clear error. And so the evidence clearly does not say what the immigration judge said it did, particularly with who was responsible for the threats against petitioner. I'm sorry. I know you're... Can I just... One last question. Why does it matter? Sorry, just kind of by the way. Why does it matter who is responsible for the threats? If we know someone, let's just assume the family affidavits are credible. So someone is threatening to kill him the second he gets back home. So does it matter why? I know for asylum and for withholding, we really care why. It has to be a particular social group and you need the nexus. But for torture, it really doesn't matter. If he's going to be killed when he gets back, why isn't that sufficient? The why, the on account of prong, you're correct, Your Honor, does not apply in... So who cares why? Who cares if it's Dom? Someone is threatening to kill him. They seem like pretty credible threats, as described by the family. And you do have the mother's affidavit saying that when she tried to go to the police with this, they did not just say, as the BIA says, well, he's not in the country. There's nothing we can do. They went on what she calls a rant about how they're not in the business of protecting criminal deportees. That's not what they do. So I'm not sure why the why matters. And the why matters here because it's petitioner's burden to show a particularized threat of torture by the... It's his name. They're all saying he's the guy we're going to kill. By the government or with its acquiescence. And the acquiescence comes from the mother's affidavit saying the police literally say we don't protect criminal deportees. And the petitioner's claim was based on his testimony that Dom was a former police officer. And so the police wouldn't protect him. So the government's position is that the why and the who does matter in this case because that's all part of his claim here. But I don't... I guess I'm just... I just want to... Oh, I'm sorry. I'll let you go in one second. Just maybe one more chance. We credit him. He believes that Dom is the source of the threats. That's why he's testifying the way he does. And we're all agreeing. We're crediting that. But why does it matter if he's wrong? If there are these credible death threats and I guess I just want you to assume for a minute the mother's affidavit suffices for acquiescence. Does it matter if he's wrong about who is trying, threatening to kill him when he gets back? And I believe it does matter, Your Honor, because it kind of explains this whole big picture of why anyone would be targeting him. If it was just random death threats, I don't think anyone would have granted Kat... There is the case law that says, you know, general gang violence is not sufficient. But it's not generalized. The threats are against him in particular. There's no particularity problem with these threats. But if we don't know why... Who cares? Like some... Like life is funny sometimes. Like for whatever reason, if... Well, I'm sorry. I shouldn't... I don't believe there have ever... There's ever been a case from this court that just says just receiving threats is enough to establish... To meet the very heavy burden of establishing... We have so many cases saying a death threat period is sufficient. But there is more information, more background information presented. If there are no further questions, sorry. Thanks so much. Thank you. Ms. Prevaci. Thank you. Just three quick points on rebuttal. Petitioner's testimony is not that he thinks Don will have him killed or that he predicts that Don will have him killed or that he's worried Don will have him killed. It's that he knows Don will have him killed. The immigration judge found him credible on that point and credited his testimony and found that Don will have him killed. Based on the record, petitioner's testimony that... It's calling petitioner's testimony speculative is rejecting the immigration judge's credibility determination. Second, this court recently re-emphasized that the BIA may not cherry pick evidence from the record in supporting its contrary view of the evidence. Doing so is an abuse of discretion and that is reversible error. Third, petitioner with his motion to amend is not seeking review of a new agency decision. We are fixing form. At the time of filing, everyone understood that petitioner was seeking review of his final order of removal and the government repeatedly characterized it as such. Thank you. Thank you very much. Good to have you all here. We're going to come down and bring counsel and then I'm going to exercise my discretion and take a brief break.  This honorable court will take a brief recess.
judges: Robert B. King, Pamela A. Harris, A. Marvin Quattlebaum Jr.